UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
    ADAN FLORES GASPAR, *et al.*,

                                Plaintiffs,

             -against-

    ADVANCED DOMINO, INC., *et al.*,

                                Defendants.

----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

23-cv-5165 (BMC)

**COGAN**, District Judge.

      Seduced by the siren song of consent, this Court approved a class action settlement in a wage case that it might not have approved had there been any objections. But settlements – even imperfect settlements – should generally not be disturbed by collateral attack, lest the crucial principle of finality of judgments be undermined. Only when the settlement approval process was so fundamentally flawed that class members lacked notice and an opportunity to be heard should the Court revisit its prior determination. That is not the case here; the plaintiff who has brought this collateral challenge to the class action settlement had both notice and an opportunity to be heard and did not avail himself of that opportunity until now, two years after approval of the settlement.

      Defendants move to dismiss the New York Labor Law claims of plaintiff Adan Flores Gaspar from November 16, 2019 to October 8, 2021, arguing that he released those claims as a condition of settlement in a prior class action alleging the same misconduct against the same defendants. Mr. Gaspar responds that his interests were not adequately represented in the prior action and the settlement should not have been approved, such that the release is invalid and his claims in the instant action are not barred by *res judicata*. Because he was adequately

represented in that action and failed to object or opt out of the class, defendants' motion is granted.

## BACKGROUND

Mr. Gaspar is one of four plaintiffs in this action by a group of employees against their employers, defendants Advanced Domino, Inc., Domino Group, LLC, Boris Salkinder, Victoria Salkinder, Genadi Vinitski, and Yakov Bekkerman. Plaintiffs bring Fair Labor Standards Act and New York Labor Law claims including unpaid overtime, unpaid spread-of-hours pay, failure to provide wage notices and statements, and retaliation.

All defendants except for Ms. Salkinder were previously named as defendants in a class action before this Court alleging similar causes of action, which was brought by employees who worked for defendants from January 8, 2015 to October 8, 2021. Abdulzalieva v. Advanced Domino, Inc., No. 21-cv-124 (E.D.N.Y.). In Abdulzalieva, the Court granted plaintiffs' motion for preliminary approval of a class action settlement, after which notice was sent to all 105 identified members of the class, including Mr. Gaspar but excluding the other plaintiffs in the instant action. That notice – which was provided in English and Russian – informed class members about the terms of the settlement and how to submit a claim form, object to the settlement, or opt out of the class. The notice also stated that if class members took no action in response to the notice, they would release their NYLL claims against the defendants and would not receive any payment.

The Court subsequently held a fairness hearing in Abdulzalieva, during which the Court granted final approval of the settlement. At no point in the prior litigation did Mr. Gaspar object to or opt out of the settlement, nor did he submit a claim form. In approving the settlement, the Court found that the agreement was fair, reasonable, adequate, and in the best interests of class

2

members, and with respect to the Rule 23 plaintiffs, satisfied the requirements of Fed. R. Civ. P. 23(a) and (b)(3) and City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

The gross settlement amount was $1,275,000, which included money set aside for plaintiffs who submitted claims forms, service awards to named plaintiffs, fees to the claims administrator, and attorneys' fees and costs. The settlement provided a payment of $382,50.00 in attorneys' fees, equivalent to 30% of the gross settlement amount. Other features of the settlement agreement in Abdulzalieva included a reversionary clause, meaning that any unclaimed funds from the settlement would revert to defendants, and a clear sailing provision, meaning defendants agreed that they would not object to or contest class counsel's application for attorneys' fees.

No class members opted out of the settlement and nineteen of them submitted claim forms, ultimately recovering $198,639.61. The sum of $393,360.37 went to class counsel in the form of costs and fees. In total, defendants paid out $690,000 – the remaining $585,000 of the gross settlement amount reverted to defendants.

In the instant action, Mr. Gaspar seeks to recover for several NYLL causes of action for the period from November 16, 2019 through July 26, 2022. Defendants move to dismiss the NYLL causes of action for the period up until October 8, 2021 because Mr. Gaspar released those claims by failing to opt-out of or otherwise object to the settlement agreement in Abdulzalieva. Defendants do not seek dismissal of Mr. Gaspar's NYLL claims from October 8, 2021 until July 26, 2022 (the date of his termination), his non-NYLL claims (which were not subject to the release provision of the Abdulzalieva settlement agreement), or any of the other plaintiffs' claims (as those plaintiffs were not class members in Abdulzalieva).

Mr. Gaspar does not dispute that this claim is barred by the terms of the Abdulzalieva settlement agreement. Rather, he argues that the agreement was fundamentally unfair, voiding the waiver. Class members only received compensation if they submitted a claim form. If they failed to submit a claim and failed to opt-out of the settlement (i.e., they did nothing in response to the settlement notice), they automatically released defendants from future actions and received no compensation.

Plaintiff adds that this outcome is particularly concerning given the fact that there were only about 100 class members, defendants knew all their addresses, defendants could have easily calculated the amount owed to each plaintiff before sending the claims documents (such that they could have just sent checks rather than solicited claims forms), and because of the reversion clause, any money that class members did not claim returned to defendants. And class counsel's fee was a percentage of the total amount that *could* be claimed by the class (it was a "claims-made" settlement), not the amount that was ultimately claimed. Finally, although plaintiffs do not contend that Mr. Gaspar lacks knowledge of the English language sufficient to understand the notice had he read it, Spanish is Mr. Gaspar's first language, and notices only went out in English and Russian.

Mr. Gaspar therefore argues he was not adequately represented in the prior action, received no consideration in exchange for his release, and that these features of the settlement agreement render it fundamentally unfair, such that his release was invalid and he is not barred from bringing this action.

## DISCUSSION

"It is well established that settlement agreements are contracts and must be construed according to general principles of contract law. Where the language of [a] release is clear, effect must be given to the intent of the parties as indicated by the language employed." Tromp v. City of New York, 465 F. App'x 50, 51 (2d Cir. 2012) (cleaned up). "Words of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies." Id. If a party tries to bring an action that it has already properly released, that action should be dismissed as violating the contractual terms of the settlement agreement. See Gupta v. Headstrong, Inc., No. 17-cv-5286, 2018 WL 1634870, at *3 (S.D.N.Y. March 30, 2018) ("it is appropriate to grant a motion to dismiss on the basis of a binding release agreement where, as here, the terms of the agreement are clear and unambiguous").

Claims that are released pursuant to a settlement agreement are generally also barred by *res judicata*, as they constitute claims that were litigated and finally determined in a prior litigation. See Scheinmann v. Dykstra, No. 16-cv-5446, 2017 WL 1422972, at *5 n.7 (S.D.N.Y. April 21, 2017) ("enforcement of the settlement also means that this lawsuit, and all of [plaintiff's] claims, are subsumed within the judgment, i.e., effectively dismissed with prejudice," barring the suit under *res judicata* and via the "contractual protection" in the settlement agreement).

"A defendant may properly raise a *res judicata* challenge to a complaint on a motion to dismiss." Isaly v. Bos. Globe Media Partners, LLC, 650 F. Supp. 3d 106, 117 (S.D.N.Y. 2023), aff'd, No. 23-cv-67, 2023 WL 6439901 (2d Cir. Oct. 3, 2023). When determining a motion to

5

dismiss on *res judicata* grounds, courts may (and often must) take "judicial notice of the publicly available and relevant filings and orders in the [prior] litigation . . . in order to determine the preclusive effect of the prior judgment for *res judicata* purposes." Murphy v. Int'l Bus. Machines Corp., No. 10-cv-6055, 2012 WL 566091, at *2 n.1 (S.D.N.Y. Feb. 21, 2012) (cleaned up). This includes publicly filed settlement agreements, like the one in Abdulzalieva. See Rodriguez v. City of New York, No. 18-cv-4805, 2021 WL 5360120, at *2 n.3 (S.D.N.Y. Nov. 16, 2021).

Settlements in class actions bind absent class members who were adequately represented, received notice of the settlement, and failed to opt-out, barring future claims by those members. Hansberry v. Lee, 311 U.S. 32 (1940), held that due process requires adequate representation of absent parties in the initial class action and that absent parties who do not receive adequate representation can collaterally attack the underlying class action judgment. Stephenson v. Dow Chemical Co., 273 F.3d 249 (2d Cir. 2001), addressed the narrower issue of collateral attacks on class action settlements. There, the plaintiffs brought Agent Orange litigation in the 1990s, despite the global class action that was settled against Agent Orange covering the same conduct in the 1980s. The district court dismissed the claims as barred by the settlement agreement. The plaintiffs appealed and the Second Circuit reversed, holding that the settlement was inadequate, thereby allowing the plaintiffs' claims to proceed. Specifically, the Second Circuit held that the new plaintiffs, who did not develop their injuries until well after the original case was settled, were not adequately represented in the underlying class action, and therefore the settlement did not preclude them from bringing their claims. The case went up to the Supreme Court, which

6

affirmed in part by an equally divided court. Dow Chem. Co. v. Stephenson, 539 U.S. 111 (2003).[1]

Subsequent decisions have held that plaintiffs cannot collaterally attack aspects of a settlement that were already raised and determined in the original action. See, e.g., Wolfert ex rel. Est. of Wolfert v. Transamerica Home First, Inc., 439 F.3d 165 (2d Cir. 2006). "To avoid being bound by the terms of the [prior] settlement, Plaintiffs must plead facts that, if true, would plausibly call into question the 'fundamental fairness' of applying its settlement terms to them." Murphy, 2012 WL 566091, at *9 (citing Wolfert, 439 F.3d at 170-75). If the initial court did not follow appropriate procedures or if the collateral attack raises issues not put forward by similarly situated individuals during the earlier action, the court presiding over the collateral attack will review the issue *de novo*. See Wolfert, 439 F.3d at 172; see also Kremer v. Chem. Const. Corp., 456 U.S. 461, 480 (1982) ("collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate the claim"). But where a party had "every opportunity to litigate their claims in full in federal court," the "full and fair opportunity" exception to *res judicata* does not apply. Twersky v. Yeshiva Univ., 112 F. Supp. 3d 173, 180 (S.D.N.Y. 2015), aff'd sub nom. Gutman v. Yeshiva Univ., 637 F. App'x 48 (2d Cir. 2016)

"It would not be a denial of due process to give full faith and credit to the class action court's ruling on adequacy of representation unless that ruling was made in the absence of an adversarial presentation of the claim" of inadequacy that Mr. Gaspar is raising in the instant proceeding. See Wolfert, 439 F.3d at 172. Just as "not every variation between the interests of

---

[1] Courts outside this Circuit have disagreed with Stephenson's reasoning, holding that collateral attacks on settlement agreements undermine efficiency, certainty, and finality, thereby running contrary to the primary values of settlement. See, e.g., In re Diet Drugs Prod. Liab. Litig., 431 F.3d 141, 146 (3d Cir. 2005) ("challenges to the terms of a settlement agreement, itself, are not appropriate for collateral review").

7

an absent class member and those of the class generally will render the class representatives inadequate," id., not every allegation that a settlement ended up being a bad deal for the class renders that settlement void on inadequate representation grounds. "[I]f the Court finds that the member's due-process rights were satisfied in the first proceeding, then the judgment will be binding." 7AA Wright, Miller & Kane § 1789.1, at 567; see also TBK Partners, Ltd. v. Western Union Corp., 675 F .2d 456, 461–62 (2d Cir. 1982) ("where there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action foreseeably obvious to notified class members . . . . the paramount policy of encouraging settlements takes precedence").

Absent class members are generally protected when the named plaintiffs "possess the same interest and suffer the same injuries as the class members." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 626 (1997).  In Abdulzalieva, Mr. Gaspar received notice that clearly explained his rights under the settlement agreement, including what would happen if he failed to file a claim or opt out.  The parties submitted briefing on the fairness of the settlement, and this Court approved it, although there were no objections.  There is no allegation that the named plaintiffs in Abdulzalieva had disparate interests from Mr. Gaspar.  Mr. Gaspar could have objected to the settlement in Abdulzalieva.  He could have submitted a claim and received payment in connection with that settlement.[2]  He could have opted out of the class, thereby preserving his instant claim.  And he could have sought relief in Abdulzalieva after the settlement was approved (e.g., a direct appeal).  He did not do any of those things.  He had his opportunity to raise these issues and he failed to do so.

---

[2] Mr. Gaspar's claim that he received no consideration under the terms of the settlement agreement is incorrect.  In exchange for releasing the NYLL causes of action, he received the right to submit a claim and be compensated.  His decision not to submit a claim does not erase that consideration.

8

Mr. Gaspar makes a compelling argument that something untoward *could* have occurred here – the form of the agreement incentivized defense counsel to minimize the number of claims submitted and disincentivized class counsel from caring whether class members received payment.[3] Again, those concerns would have been reasonable objections to raise during the objection period or could have motivated him to opt out of the class. But they are not enough for me to find that plaintiff's counsel did anything fundamentally improper in the initial case. If Mr. Gaspar had evidence of collusion between counsel in Abdulzalieva, then I could set aside all these issues – if class counsel was not adequately representing him, then it would be missing the point to say "you were adequately represented because the people representing you said so." But he has offered no such evidence. Nor has he offered any evidence that the interests of the Abdulzalieva class diverge from his own interests here, thus distinguishing this case from Stephenson. Finding the settlement unfair based solely on these structural features would mean that any settlement agreement with this combination of features (claims-made fee arrangement; opt in to recover and opt out to avoid release; clear-sailing clause; and a reversion clause) is fundamentally unfair and unenforceable. That is not the law and I decline to make it so.

The issues Mr. Gaspar raises regarding the settlement agreement were litigated and determined in the initial action. The issues he raises largely were addressed in the briefing

---

[3] The financial outcome of the settlement underscores his point. Once all was said and done, plaintiffs who submitted claims received about 10% of the full settlement value and about 20% of the amount claimable by the class; a larger amount went to class counsel (33% of total settlement and about twice as much as was ultimately recovered by class members); and the largest amount (about 50% of the total settlement and about 80% of the amount claimable by the class) reverted to defendant.

9

supporting the settlement, including procedural fairness concerns, the claims-made fee arrangement, and that class counsel "vigorously" represented the class.

Indeed, at the time of settlement approval, the parties and the Court knew how many people had opted in and how much they would recover. As the pre-approval briefing in Abdulzalieva noted, the settlement had achieved an 18.1% participation rate, which is above average for claims-made settlements and in line with settlement agreements approved by other courts. See, e.g., Hernandez v. Immortal Rise, Inc., 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (approving a settlement where "the 22 class members filing claims constitute[d] a 20% participation rate," which is "well above average in class action settlements," as "[c]laims-made settlements typically have a participation rate in the 10-15 percent range"); Wood v. Saroj & Manju Invs. Philadelphia LLC, No. 19-cv-2820, 2021 WL 1945809, at *7 (E.D. Pa. May 14, 2021) (approving settlement with reversion clause and 21% participation rate). To the extent there are arguments that were not actually raised in Abdulzalieva, Mr. Gaspar has not presented any reason why those arguments could not have been raised there. Cf. Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (*res judicata* bars relitigation of issues that "could have been raised" in prior action).[4]

The Court analyzed that settlement agreement in Abdulzalieva, held a fairness hearing, and found it fair, reasonable, and adequate before entering judgment dismissing the case. Mr. Gaspar has failed to plead facts that would "plausibly call into question the 'fundamental

---

[4] Mr. Gaspar's argument about not receiving the notice in Spanish presents a slightly different issue. Whereas the other concerns operate under the assumption that Mr. Gaspar could have objected to the settlement notice, he obviously could not have objected to a notice that he could not read. Although Mr. Gaspar states that his first language is Spanish and he is not fluent in English, he does not allege that he cannot understand English or that he could not understand the notice. If Mr. Gaspar is correct when he says that many people in the class were Spanish speakers who did not understand English at all, then it would be concerning that the employer sent notices only in English and Russian. But that does not give Mr. Gaspar, who does understand English, grounds to collaterally attack the settlement.

10

fairness' of regarding" him as a member of the Abdulzalieva class.  See Murphy, 2012 WL 566091, at *9.  Therefore, I defer to my prior ruling approving the settlement agreement and hold that Mr. Gaspar's NYLL claims against these defendants covering the period from January 8, 2015 to October 8, 2021 are "barred by *res judicata* and the preclusive effect of the [] settlement and release."  See id. at *11.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss Mr. Gaspar's NYLL claims for the period covering November 16, 2019 to October 8, 2021 is granted.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
       April 30, 2024